IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

**WILLIE HENDERSON**, individually and on behalf of all others similarly situated,

    Plaintiff,

v.

**GENERAL REVENUE CORPORATION and PIONEER CREDIT RECOVERY, INC.**,

    Defendants.

Civil Action No. 7:17-cv-00292-GEC

## DEFENDANT GENERAL REVENUE CORPORATION'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL

### INTRODUCTION

In his Motion to Compel (the "Motion"), plaintiff Willie Henderson ("Henderson") offers a very incomplete characterization of the instant dispute. As detailed below, Henderson purports to bring claims here against defendant General Revenue Corporation ("GRC") for himself and for a proposed class of persons in Virginia under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et. seq.* (the "FDCPA").[1] According to Henderson, GRC violated the FDCPA by demanding payment of a debt not owed, in a letter dated February 7, 2017. (*See* Amended Complaint, (Dkt. 19-1), Ex. A (the "Validation Notice").) In the Validation Notice, GRC stated the amounts owed on Henderson's defaulted student loan as: $102,174.81 in principal; $1,861.86 in interest; and $20,430.70 as a collection charge. (*Id*.) Nowhere in the Amended

---

[1] The Amended Complaint also contains claims against newly added defendant Pioneer Credit Recovery, Inc. ("Pioneer"). Henderson's Motion does not involve those claims as no discovery has been served on Pioneer. In fact, Pioneer has not yet responded to the Amended Complaint; it will do so on January 30, 2018.

Complaint does Henderson challenge the amounts of principal or interest owing. Rather, he contends that, in the Validation Notice, GRC failed to provide numerous disclosures that are a prerequisite to the assessment of a collection charge on a defaulted, federally guaranteed student loan. (Amended Complaint, ¶¶ 23-30.)

Very simply, Henderson's contention reflects a fundamental misunderstanding of the regulatory framework that applies to his student loan and, indeed, the Validation Notice is irrelevant to the assessment of a collection charge on that loan. Instead, an entirely different disclosure, required by the federal regulations governing Henderson's student loan, triggers the collection charge assessment (the "Claims Paid Letter"), and Henderson admittedly received a Claims Paid Letter. Thus, Henderson's claims against GRC under the FDCPA are baseless.

Meanwhile, in his Motion, Henderson seeks to proceed with class-wide discovery on the claims, and seeks sanctions, yet does not meaningfully discuss GRC's <u>extensive</u> efforts to resolve the failure of his legal theory against GRC without unnecessary and costly motion practice. Henderson asserted the claims in his original complaint, filed on June 22, 2017. GRC thereafter engaged in a courteous and detailed dialogue with Henderson about the lack of viability of the claim and, October 18, 2017, GRC <u>provided</u> a copy of the Claims Paid Letter that had been sent to Henderson (which his counsel had not seen, but which they subsequently acknowledged he had received). Nevertheless, as of December 21, 2017, Henderson filed an Amended Complaint, which adds Pioneer as a defendant, but also re-asserts the claims against GRC, <u>without</u> any mention of the Claims Paid Letter and <u>without</u> attaching it. GRC then again demanded legal support for the claims, including, most recently, by letter dated January 8, 2018 (the "January 8 Letter"). In the January 8 Letter, GRC requested an explanation of the purported legal basis for the claims and stated that, if such explanation was not provided, GRC would take

appropriate action by motion, and including on the pending discovery (i.e., a motion for protective order or to stay discovery). Henderson did not respond to the January 8 Letter; instead, he filed the Motion. GRC will move to dismiss the claims on January 30, 2018.

GRC submits that, against this background, it has acted in good faith. GRC was hopeful that informal efforts would resolve the legal issue, but those efforts failed. In addition, and importantly, even if Henderson's claims had merit, which they do not, his discovery requests are improper for numerous reasons. Accordingly, the Court should deny the Motion in its entirety and should award GRC its costs and attorneys' fees associated with responding to the Motion.

## BACKGROUND

### A. The Regulatory Framework Of The Federal Family Education Loan Program And The Disputed Collection Charge

Henderson's student loan was originated under the Federal Family Education Loan Program ("FFELP"), as authorized by the Higher Education Act, Pub. L. No. 89-329, 79 Stat. 1219 (1965) (the "HEA"). Under the FFELP, private lenders utilized their own funds to make loans to students attending postsecondary institutions and to the parents of such students. *See* 34 C.F.R. § 682.100(a) (the FFELP was a public/private lending partnership designed to enable a student or his or her parents to pay for postsecondary education); *see also College Loan Corp. v. SLM Corp.*, 396 F.3d 588, 590 (4th Cir. 2005) (noting that the FFELP was "created by Title IV of the HEA" and "is the largest of the HEA's several student financial aid programs").

In the event of default, FFELP loans are first guaranteed by state or nonprofit entities -- guaranty agencies -- but, ultimately, FFELP loans are guaranteed by the federal government. *See* 20 U.S.C. § 1078(a)-(c). Thus, when a borrower defaults on a FFELP loan, and the lender is unable to recover despite due diligence, the lender recoups its loss from the guaranty agency. 34 C.F.R. § 682.102(g) ("If a borrower defaults on a loan, the guarantor reimburses the lender for

- 3 -
LOS_ANGELES/#38260.1
Case 7:17-cv-00292-GEC   Document 31   Filed 01/30/18   Page 3 of 17   Pageid#: 186

the amount of its loss. The guarantor then collects the amount owed from the borrower."). Because the federal government has ultimate responsibility for the loan, when a lender assigns a defaulted FFELP loan to a guaranty agency, the guaranty agency must take diligent steps to recover the defaulted amount before it can recover from the federal government. *See, e.g.,*. 34 C.F.R. §§ 682.404(a), 682.410(b)(6); *see also Great Lakes Higher Educ. Corp. v. Cavazos*, 911 F.2d 10, 15 (7th Cir. 1990) ("In essence [a guaranty agency] is an intermediary between the United States and the lender of the student loan.").

The recovery of defaulted FFELP loans is subject to extensive regulations promulgated under the HEA. *See Chae v. SLM Corp.*, 593 F.3d 936, 945 (9th Cir. 2010) (noting that Congress "instruct[ed]" the Department of Education to "[e]stablish a set of rules that will apply across the board."). Indeed, through a public notice and comment process, detailed regulations prescribe every aspect of FFELP servicing, including charges to borrowers (34 C.F.R. § 682.202, § 685.202), repayment plans (§ 682.209, § 685.208), deferment and forbearance (§§ 682.210–211, §§ 685.204–205) and due diligence in seeking payments (§ 682.208).

As relevant to Henderson's Amended Complaint, the regulations also specifically govern the assessment of collection costs arising from recovery efforts on defaulted FFELP loans. *See* 34 CFR § 682.410(b)(2) ("Whether or not provided for in the borrower's promissory note and subject to any limitation on the amount of those costs in that note, the guaranty agency shall charge a borrower an amount equal to reasonable costs incurred by the agency in collecting a loan on which the agency has paid a default or bankruptcy claim."); *see also Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 641 (7th Cir. 2015) (stating that the HEA requires "guaranty agencies to assess collection costs against borrowers to prevent these costs from being passed on to federal taxpayers."). Importantly, though, in order to establish an entitlement to the

- 4 -

collection charge, a guaranty agency must comply with the requirements of 34 CFR § 682.410(b)(6)(ii) -- i.e., "[w]ithin 45 days after paying a lender's default claim, the agency must send a notice to the borrower that contains the information described in paragraph (b)(5)(ii) of this section."  *Bible*, 799 F.3d at 641 ("a guaranty agency must give a borrower who has defaulted notice and the opportunity to enter into a repayment agreement before it assesses collection costs" pursuant to 34 CFR 682.410(b)(5)(ii)).  The information required by 34 CFR § 682.410(b)(5)(ii) includes, among other things, an explanation of how the collection costs are calculated (or the authority for calculating them), an explanation of the opportunities available to the borrower under agency rules to inspect the agency's records and a statement of the grounds upon which a borrower may object that the loan obligation is not legally enforceable.  *See* 34 CFR § 682.410(b)(5)(ii); *see also Bible*, 799 F.3d at 641.  This notice under 34 CFR § 682.410(b)(5)(ii) is generally referred to as a "claims paid letter" -- i.e., the guaranty agency has, by then, paid the original lender's claim on the defaulted loan.

### B. The Regulatory Framework Of The FDCPA

Congress enacted the FDCPA in order to "eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  15 U.S.C. § 1692(e); *see also Russell v. Absolute Collection Serv.*, No. 09CV515, 2010 U.S. Dist. LEXIS 114546, at * 9 (M.D. N.C. Oct. 27, 2010) (holding that the FDCPA's purpose is to eliminate "any debt collection practices that are abusive.").  The FDCPA also contains numerous, specific requirements, including under Section 1692g, which relates to the validation of debts.

Section 1692g was enacted to "eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid." S. Rep. No. 95-382, at 4 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1659, 1699; *see also Bartlett v. Heibl*, 128 F.3d 497, 499 (7th Cir. 1997) ("These provisions are intended for the case in which the debt collector, being a hireling of the creditor rather than the creditor itself, may lack first-hand knowledge of the debt."). Accordingly, Section 1692g requires debt collectors to send written "validation notices" to debtors informing them of their rights to dispute a debt. *See, e.g. McCormick v. Wells Fargo Bank*, 640 F. Supp. 2d 795, 799-800 (S.D. W. Va. 2009). Pursuant to Section 1692g, the validation notice must include the amount of the debt, the name of the creditor and "a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector." 15 U.S.C. § 1692g(a)(1)-(3); *McCormick*, 640 F. Supp. 2d at 799-800. The notice also must apprise the debtor that, upon written request within thirty days, the debt collector will provide verification of the debt and the name and address information of the original creditor if different from the current creditor. *Id.* § 1692g(a)(4)-(5); *McCormick*, 640 F. Supp. 2d at 799-800.

### C. Henderson's Allegations

In this action, Henderson's FDCPA claims are based on GRC's alleged "efforts to collect federal student loan debt from Plaintiff and others similarly situated." (Dkt. 19-1, ¶ 1). According to the Amended Complaint, in approximately 1995, Henderson obtained a federal student loan (i.e., a FFELP loan), and he made intermittent payments from 1997 through 2015. (*Id.*, ¶ 8). However, Henderson's FFELP loan now is in "default status." (*Id.*, ¶ 10). In light of the default, the guaranty agency on Henderson's loan, United Students Aid Fund ("USAF"), paid

the lender and took assignment of the loan. (*Id.*, ¶ 11). Following USAF's assignment of the loan for collection, GRC undertook those efforts, and a collection charge was assessed to Henderson, in the amount of $20,430.70. (*Id.* ¶ 19).

In the Amended Complaint, Henderson states that, before a guaranty agency "assesses collection costs against a borrower" it must comply with a series of requirements in a written notice. (*Id.* ¶ 14 (emphasis in original)). Henderson then goes on, over the course of multiple pages, to cite to the corresponding FFELP regulations, including specifically 34 CFR § 682.410(b)(5)(ii). (*Id.* ¶¶ 14-17 (including sub-paragraphs)). Henderson next alleges that GRC violated the FDCPA by not providing this information in the <u>Validation Notice</u>, which is governed, and required, by an entirely distinct provision of law -- Section 1692g. <u>Nowhere</u> in the Amended Complaint does Henderson reference the <u>Claims Paid Letter</u> that he <u>received</u>, <u>nor</u> is it attached as an exhibit.

Nevertheless, based on these plainly deficient allegations, Henderson purports to assert Counts I-III and V of the Amended Complaint against GRC, for himself and the following class:

> Class A plaintiffs, defined as "[a]ll natural persons who are residents of Virginia who are similar situated to Plaintiff in that, within one year of the commencement of this action and continuing to the date that an order is entered certifying this class, Defendant GRC sent them a letter in a form substantially similar or materially identical to [the Validation Notice]."

(Dkt. 19-1, ¶ 57).

### D. Dialogue Regarding The Asserted Claim

On October 17, 2017, GRC's counsel first inquired into the basis of Henderson's claims, and also inquired as to whether Henderson's counsel had considered the Claims Paid Letter. (Exhibit A.) On October 18, 2017, Henderson's counsel stated that they had not seen the Claims Paid Letter, and asked for a copy, which GRC's counsel provided on the same day. (Exhibit B.)

- 7 -
LOS_ANGELES/#38260.1
Case 7:17-cv-00292-GEC   Document 31   Filed 01/30/18   Page 7 of 17   Pageid#: 190

GRC's counsel followed up on October 31, 2017, asking for a telephone call, which call took place on November 7, 2017. (Exhibit C.) At the conclusion of the call, Henderson's counsel stated that they would further consider the claims. Henderson's counsel acknowledged that their client <u>received</u> the Claims Paid Letter.

On December 1, 2017, Henderson filed a Motion for Leave to Amend, and attached the proposed Amended Complaint. As noted above, the Amended Complaint makes <u>no reference whatsoever</u> to the existence of the Claims Paid Letter, and it is <u>not</u> attached as an exhibit. Accordingly, on December 7, 2017, GRC's counsel followed up again, asking for authority to support Henderson's claims in light of the existence of the Claims Paid Letter. (Exhibit D.) On December 8, 2017, Henderson's counsel provided a written response to GRC's email that failed to meaningfully address the existence of the Claims Paid Letter. (Exhibit E.) Indeed, counsel's response repeatedly states that any request for authority can be found by examining the "proposed Amended Complaint." (*Id*.) Based on the failure to acknowledge or reference the existence of the Claims Paid Letter, GRC's counsel once again reached out by letter dated December 18, 2017, asking that Henderson acknowledge the existence of the Claims Paid Letter and provide a substantive response regarding "its impact on Mr. Henderson's claim[s]." (Exhibit F.) On December 29, 2017, Henderson's counsel responded by asserting, with no explanation, that Henderson is "not obligated to refer to the [Claims Paid Letter] in the Amended Complaint." (Exhibit G.)

Finally, in a last effort to resolve the issue, GRC's counsel sent the January 8 Letter, requesting an explanation for why Henderson refused to acknowledge the existence of the Claims Paid Letter. (Exhibit H.) In the January 8 Letter, counsel for GRC stated that, absent an explanation which acknowledges the existence of the Claims Paid Letter, GRC would seek

appropriate relief by motion, including on the pending discovery (i.e., for entry of a protective order or a stay of discovery). (*Id.*) Henderson's counsel did not respond to the January 8 Letter and instead filed the instant Motion.

## ARGUMENT

### A. Legal Standard

Federal Rule of Civil Procedure 26 defines the scope of discovery as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). However, despite the broad construction afforded the rules of discovery, a litigant cannot conduct discovery that is intended to harass, annoy, embarrass or oppress the opposing party. *See* Fed. R. Civ. P. 26(c) For instance, based on the existence of legal grounds for dismissal, a court may stay or preclude discovery, thus avoiding the attendant effort and expense. *See Landry v. Air Line Pilots Ass'n Int'l AFL-CIO*, 901 F.2d 404, 435-36 (5th Cir. 1990) (precluding discovery pending the outcome of dispositive motions since "discovery was not needed to resolve" the pending motions); *DSM Desotech Inc. v. 3D Sys. Corp.*, No. 08 CV 1531, 2008 WL 4812440, at *2 (N.D. Ill. Oct. 28, 2008) ("it is appropriate to not permit discovery where a purely legal challenge may resolve the case, and discovery is burdensome and costly to the parties"); *Rubberlite, Inc. v. Baychar Holdings, LLC*, No. CV 3:08-1106, 2010 WL 11565379, at *1 (S.D.W. Va. May 25, 2010) (concluding that discovery against defendant was inappropriate because plaintiff could not state a claim against defendant upon which relief could be granted); *Davis v. Clear*, Civil Action No. 7:15-cv-003632016 U.S. Dist.

LEXIS 45, at *5 (W.D. Va. Jan. 4, 2016) (granting motion to stay discovery in light of pending motion to dismiss).

Here, GRC is faced with claims that makes no sense, and GRC engaged in extensive efforts to obtain some explanation. GRC also intended to move to stay discovery, or for a protective order, absent explanation from Henderson. However, Henderson filed this Motion, rather than offering that explanation. The Motion should be denied in its entirety, as detailed below.

### B. Henderson's Claims Are Plainly Baseless, And GRC Intended To Move On The Discovery.

As explained above, Henderson conflates the Validation Notice with the Claims Paid Letter and, thus, asserts completely unsupported claims against GRC. Indeed, notwithstanding GRC's extensive efforts to secure some articulation of the claims, Henderson could not provide it. On this basis alone, GRC acted properly in objecting to Henderson's discovery requests (and especially in anticipation of its own motion to stay or for protective order). No less an authority than the United States Supreme Court has recognized that district courts have discretion to stay discovery pending determination of a dispositive legal issue. *See Siegert v. Gilley*, 500 U.S. 226, 231-32 (1991); *see also Tilley v. United States*, 270 F. Supp. 2d 731, 734 (M.D. N.C. 2003). Factors that support granting a stay include: the potential for a dispositive motion to terminate all claims in the case, or all claims against a particular defendant; strong support for the dispositive motion on the merits; and irrelevancy of the discovery at issue to the dispositive motion. *See Landry*, 901 F.2d at 435-36 (precluding discovery pending the outcome of dispositive motions since "discovery was not needed to resolve" the pending motions); *DSM Desotech*, 2008 WL 4812440, at *2 (holding same).

Here, the defect in Henderson's claims is clear, and GRC will file its Motion to Dismiss on January 30, 2018. GRC also would have filed its motion to stay or for a protective order, but it now is forced to oppose this Motion instead. In any event, given the lack of merit in Henderson's claims, discovery should not proceed at this time.

### C. In Addition, And Separately, Henderson's Specific Discovery Requests Are Objectionable.

As noted above, Henderson purports to bring the claims against GRC for himself and a class of individuals residing in Virginia. Even setting aside Henderson's confusion regarding the proper disclosure upon which he could base a claim, many of his requests are still objectionable.

For example, Henderson requests that GRC "[i]dentify each and every collections-related lawsuit, arbitration, or investigation in which [GRC] has been involved from 2007 through the present." (Interrogatory No. 8, Ex. A attached to Motion; *see also* Request for Production No. 11, Ex. B attached to Motion). The requested information is simply irrelevant to the underlying case here, and a ten-year time period plainly is overbroad. The majority of courts analyzing such requests have appropriately limited the requests to require only the production of a list of similar lawsuits and nothing more. *See Mohr v. Sec. Credit Servs., LLC*, 141 F. Supp. 3d 179, 184-85 (N.D. N.Y. 2015) (allowing the production of a *list* of complaints, instead of "all documents" concerning the complaints); *Pollock v. Northland Grp., Inc.*, No. 12-80335-RYSKAMP/HOPKINS, 2012 U.S. Dist. LEXIS 191950, at *2 (S.D. Fla. Aug. 22, 2012); *Rubin v. Northland Grp., Inc.*, No. 12-80320-RYSKAMP/HOPKINS, 2012 U.S. Dist. LEXIS 191949, at *2 (S.D. Fla. Aug. 13, 2012); *Anderson v. Domino's Pizza, Inc.*, No. 11-cv-902 RBL, 2012 U.S. Dist. LEXIS 45503, at *6 (W.D. Wash. Mar. 30, 2012).

Similar issues arise with respect to many of Henderson's requests that relate to gathering information on the proposed class members. (*See, e.g.* Interrogatory Nos. 2-3 and 6-7, Ex. A

attached to Motion; Request for Production Nos. 1). Discovery of this information is inappropriate at this stage in the litigation, and also imposes undue burden. *See Velasquez-Monterrosa v. Mi Casita Rests.*, 5:14-CV-448 BO, 2015 U.S. Dist. LEXIS 57385, at * (E.D. N.C. May 1, 2015) (denying motion to compel information related to identifying prospective class members prior to class certification); *Gusman v. Comcast Corp.*, 298 F.R.D. 592, 597 (S.D. Cal. 2014) (affirming denial of motion to compel production of identifying information of potential class members on grounds that such discovery was unduly intrusive and burdensome, and less intrusive means existed of obtaining discovery related to class certification); *Palmer v. Stassinos*, No. 5:04CV3026 RMW(RS), 2005 WL 3868003, at *4 (N.D. Cal. May 18, 2005) (denying motion to compel the production of putative class members' personal data prior to class certification because their "rights to privacy" were implicated and plaintiffs "failed to establish a need for the disclosure of putative class members personal data" prior to class certification); *Bird Hotel Corp. v. Super 8 Motels, Inc.*, No. CIV 06-4073, 2007 WL 404703, at *4 (D.S.D. Feb. 1, 2007) (explaining that "pre-certification discovery of identification, telephone, and address information for potential class members" was inappropriate); *see also* Fed. R. Civ. P. 26(b)(1) (requiring that discovery be "proportional to the needs of the case, considering . . . the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit"). Here, no class has been certified and counsel represents only Henderson. The privacy rights of putative class members alone prohibits disclosure of this type of information at this stage, particularly where, as here, the claims of the individual plaintiff are fundamentally flawed.

Moreover, every request for production propounded by Henderson seeks "all documents" related to a particular subject matter. "[A] request for all documents relating to a subject is

usually subject to criticism as overbroad since [. . .] all documents relate to others in some remote fashion. Such a request unfairly places the onus of non-production on the recipient of the request and not where it belongs -- upon the person who drafted such a sloppy request." *James Madison Project v. CIA*, Case No. 1:08-CV-1323 (GBL), 2009 U.S. Dist. LEXIS 78671, at *10 (E.D. Va. Aug. 31, 2009) (citations omitted). Indeed, it is well established that "[b]lanket requests of this kind are plainly overbroad and impermissible." *Henry v. Morgan's Hotel Grp., Inc.*, No. 15-CV-1789 (ER)(JLC), 2016 WL 303114, at *2 (S.D.N.Y. Jan. 25, 2016) (citing *Gropper v. David Ellis Real Estate, L.P.*, No. 13–Civ.–2068 (ALC)(JCF), 2014 WL 518234, at *4 (S.D.N.Y. Feb. 10, 2014) (finding that a "request for 'any and all' documents . . . is inherently overbroad"). *Rice v. Reliastar Life Insurance Co.*, Civil Action No. 11–44 BAJ CN, 2011 WL 5513181, at *2 (M.D. La. Nov. 10, 2011) (finding that "a request for 'any and all documents' relating to a particular subject is overbroad and amounts to little more than a fishing expedition"); *Badr v. Liberty Mutual Group, Inc.*, No. 06–CV–1208, 2007 WL 2904210, at *3 (D. Conn. Sept. 28, 2007) (finding request for "any and all" documents "overly broad")). These requests are overbroad on their face and place an undue burden on GRC to collect "all documents" that relate to sixteen different subjects.

### D. GRC Has Not Waived The Attorney-Client Privilege.

Where overly broad and improper discovery requests include within their scope potentially privileged documents, and the party from whom the discovery is sought has objected on that basis, a privilege log need not be produced until the objections are resolved. *See United States v. Philip Morris Inc.*, 347 F.3d 951, 954 (D.C. Cir. 2003) ("In short, if a party's pending objections apply to allegedly privileged documents, the party need not log the document until the court rules on its objections." (quotation marks and citation omitted)); *Grand River Enterprises*

- 13 -

*Six Nations, Ltd. v. King*, No. 02 CIV 5068(JFK), 2009 WL 63461, at *3 (S.D.N.Y. Jan. 12, 2009) ("Defendants did not have to complete their privilege logs while [their overbreadth] objection was pending."); *see also ASPCA v. Ringling Bros. & Barnum & Bailey Circus*, 233 F.R.D. 209, 212-13 (D. D.C. 2006) (holding that, if objections are pending to discovery requests "then the objected to documents are not yet 'otherwise discoverable' within the meaning of Rule 26(b)(5)").

Here, Henderson asserts a waiver based on the fact that GRC has not provided a privilege log at this time. The authority cited above, however, defeats this contention. Henderson's requests are overbroad and improper. *See Philip Morris*, 347 F.3d at 954; *Grand River Enterprises*, 2009 WL 63461, at *3; *ASPCA*, 233 F.R.D. 212-13. In any event, even if GRC had failed to meet its obligations with respect to a privilege log (which it did not), waiver is not automatic. *Wellin v. Wellin*, Case No. 2:13-CV-1831-DCN, 2015 U.S. Dist. LEXIS 135107, at *43-46 (D. S.C. July 30, 2015) (holding that, in light of the on-going state of written discovery and the complexity of the legal issues, waiver of privilege is not justified); *Philip Morris*, 347 F.3d at 954; *First Sav. Bank, F.S.B. v. First Bank Sys., Inc.*, 902 F. Supp. 1356, 1361 (D. Kan. 1995) ("As the federal rules, case law and commentators suggest, waiver of a privilege is a serious sanction most suitable for cases of unjustified delay, inexcusable conduct, and bad faith."). This is particularly true where, as here, the party reasonably believes that its objections apply to the potentially privileged documents. *See Philip Morris*, 347 F.3d at 954. Accordingly, there is no basis for finding waiver here.

>    **E.    Pursuant to Fed. R. Civ. P. 37(a)(5)(B), The Court Should Order Henderson To Pay GRC's Costs And Attorneys' Fees Incurred In Opposing The Motion.**

Under Rule 37(a)(5)(B), when a motion to compel is denied, the movant is required to pay costs and fees accrued by the opposing party in responding to the motion:

> If the motion [to compel discovery] is denied, the court may issue any protective order authorized under Rule 26(c) and must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees.

Fed. R. Civ. P. 37(a)(5)(B). This applies with particular force if the motion is frivolous, vexatious and/or brought for purposes of harassment. *See Schumann v. Collier Anesthesia, P.A.*, No. 2:12-CV-347-FtM-29CM, 2014 WL 1230644, at *3 (M.D. Fla. Mar. 25, 2014) (agreeing to hold a hearing on awarding fees to the nonmovant for a frivolous motion); *Green v. Seattle Art Museum*, No. C07-58MJP, 2007 U.S. Dist. LEXIS 95477, at *11-12 (W.D. Wash. Dec. 21, 2007) (denying a motion to compel and awarding sanctions based on the frivolous nature of the motion).

Here, the Motion serves no legitimate purpose, and should not have been brought. GRC has a well-founded and amply supported belief that Henderson's claims are baseless, which Henderson has not contradicted. Further, GRC informed Henderson that it would take appropriate action on the discovery in the January 8 Letter, but Henderson filed this Motion rather than responding to that letter. Indeed, in retrospect, GRC may have simply spent too much time on pursuing an informal resolution of the legal issue. However, GRC certainly should not be sanctioned given the existence of a good faith dispute here on the merits, and GRC's stated intent to take appropriate action on the discovery. *See Vica Coal Co. v. Crosby*, 212 F.R.D. 498, 506 (S.D. W. Va. 2003) (denying request for attorney's fees even where a motion to compel was granted). If anything, Henderson should pay GRC's fees and costs incurred in opposing the Motion.

## **CONCLUSION**

For the foregoing reasons, Henderson's Motion should be denied.

Dated: January 30, 2018  Respectfully submitted,

By: /s/ Joshua F. P. Long

WOODS ROGERS PLC
Joshua F.P. Long
jlong@woodsrogers.com
Frances Elizabeth B. Waller
bburgin@woodsrogers.com
P.O. Box 14125
Roanoke, VA 24038-4125
Tel: 540-983-7625
Fax: 540-983-7711

VEDDER PRICE (CA), LLP
Lisa M. Simonetti
lsimonetti@vedderprice.com
1925 Century Park East
Suite 1900
Los Angeles, CA 90067
Tel: 424-204-7700
Fax: 424-204-7702

*Attorneys for Defendant*
*GENERAL REVENUE CORPORATION*

# CERTIFICATE OF SERVICE

I hereby certify that on January 30, 2018 the foregoing **DEFENDANT GENERAL REVENUE CORPORATION'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL** was electronically filed and served through the Court's CM/ECF system, which will send a notice of electronic filing to the following:

John P. Fishwick, Jr.
John.Fishwick@fishwickandassociates.com
Monica L. Mroz
Monica.Mroz@fishwickandassociates.com
FISHWICK & ASSOCIATES PLC
101 South Jefferson Street, Suite 500
Roanoke, VA 24011
T: 540-545-5890
F: 540-345-5789

/s/ Joshua F. P. Long