CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAR 21 2019

JULIA C. DUDLEY, CLERK
BY:
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

WILLIE HENDERSON, individually and )
behalf of all others similarly situated, )
) Civil Action No. 7:17CV00292
Plaintiff, )
) **MEMORANDUM OPINION**
v. )
) By: Hon. Glen E. Conrad
GENERAL REVENUE CORPORATION, ) Senior United States District Judge
et al., )
)
Defendants. )

This case is presently before the court on the plaintiff's motion for leave to file a second amended complaint. For the reasons set forth below, the court will grant the plaintiff's motion.

## Background

On June 22, 2017, plaintiff Willie Henderson filed the instant action against General Revenue Corporation ("GRC"), alleging that GRC violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692p, in its efforts to collect federal student loan debts from Henderson and others similarly situated. Henderson's original complaint was based on a letter dated February 7, 2017, in which GRC advised Henderson that he had defaulted on his student loan debt and owed over $100,000 in principal, interest, and collection costs.

On December 21, 2017, the court granted Henderson's motion for leave to file an amended complaint. The amended complaint included additional facts regarding GRC's alleged violations of the FDCPA. It also added claims against a new defendant, Pioneer Credit Recovery, Inc. ("Pioneer"), stemming from Pioneer's communications with Henderson. Both GRC and Pioneer are subsidiaries of Navient Corporation ("Navient").

On August 14, 2018, Henderson filed a motion for class certification. Henderson then moved to stay the deadlines for briefing the certification motion pending discovery. That motion was granted and the parties were given until January 21, 2019 to complete discovery.

At the time Henderson moved for class certification, he knew that GRC and Pioneer were performing the debt collection activities at issue pursuant to agreements with Navient Portfolio Management, LLC ("NPM"), another subsidiary of Navient. In January of 2019, the defendants produced a copy of the "Master Servicing Agreement" between NPM and several loan guarantors, including United Student Aid Funds, Inc. ("USAF"), the guarantor of Henderson's alleged debt. Under the terms of the Master Servicing Agreement, NPM is obligated to "perform all customary and usual portfolio management and collection services and duties associated with the collection of defaulted educational loans." Master Servicing Agreement § A(1), Dkt. No. 93-1. The agreement further provides that NPM "shall use commercially reasonable efforts . . . to obtain payment in full of the principal balance, accrued interest, and collection charges on a Loan." Id. § A(5). The agreement permits NPM to utilize the services of "Subordinate Servicers," with the understanding that NPM "shall have sole responsibility for contracting with, compensation, oversight, and audit of" such servicers. Id. § A(4).

On February 4, 2019, Henderson filed the instant motion for leave to file a second amended complaint. The proposed amended pleading adds NPM as a defendant and asserts claims of vicarious liability against NPM. That same day, in accordance with a briefing order entered on October 22, 2018, Henderson filed a memorandum in support of his motion for class certification.

In light of the tandem filings by the plaintiff, the existing defendants requested a status conference, which was held on February 11, 2019. Following the status conference, the court

2

entered an order establishing a briefing schedule for the plaintiff's second motion to amend. The court advised the parties that it would set new deadlines for additional briefing on the issue of class certification following the disposition of that motion. The court tentatively rescheduled the hearing on the issue of class certification for April 26, 2019.

## Discussion

After the period for amending a complaint as a matter of right has expired, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Rule 15 provides that leave should be freely given when justice so requires. Id. "The Supreme Court has declared that 'this mandate is to be heeded.'" Edwards v. City of Goldsboro, 178 F.3d 231, 242 (4th Cir. 1999) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)). "The law is well settled 'that leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile.'" Id. (emphasis in original) (quoting Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir. 1986)).

In opposing the pending motion, GRC and Pioneer argue that the motion is untimely and that the proposed amendments would be futile. For the following reasons, the court finds both arguments unpersuasive.

Turning first to the timing of the motion, Henderson does not dispute that he was aware of NPM's contractual relationship with GRC and Pioneer as early as March of 2018, when he received copies of the defendants' respective agreements with NPM. However, Henderson emphasizes that the full extent of NPM's role in the debt collection efforts undertaken by GRC and Pioneer did not become clear until the defendants produced the Master Services Agreement in January of 2019. Less than one month later, Henderson filed the instant motion seeking leave

3

to add NPM as a defendant. Under these circumstances, the court does not believe that the timing of the motion weighs against amendment.

Moreover, even assuming that the motion could have been filed earlier, the United States Court of Appeals for the Fourth Circuit has made clear that "[d]elay alone is an insufficient reason to deny leave to amend." Edwards, 178 F.3d at 242. "Rather, the delay must be accompanied by prejudice, bad faith, or futility." Id. In their brief in opposition to the pending motion, GRC and Pioneer suggest that granting leave to amend would prejudice NPM's ability to "defend against certification of class-action claims." Defs.' Br. Opp'n 5, Dkt. No. 98. However, the court made clear at the previous status conference that it would allow NPM sufficient time to respond to the motion for class certification if the court granted leave to file a second amended complaint. The court tentatively rescheduled the hearing on the certification motion for April 26, 2019, with the understanding that the hearing would be postponed if necessary to allow NPM enough time to defend its position on the issue of class certification and conduct any additional class-related discovery. Accordingly, the court is unable to conclude that the proposed amendments would unduly prejudice NPM.

The court is also unable to conclude that the proposed amendments would be futile. See Save Our Sound OBX, Inc. v. N.C. Dep't of Transp., 914 F.3d 213, 228 (4th Cir. 2019) ("A proposed amendment is . . . futile if the claim it presents would not survive a motion to dismiss."). In the second amended complaint, Henderson seeks to hold NPM vicariously liable for the alleged violations of the FDCPA by GRC and Pioneer. Although the defendants correctly point out that neither the Fourth Circuit nor the Supreme Court has weighed in on this issue, other circuits and district courts in this circuit have recognized vicarious liability under the FDCPA. See Fontell v. Hassett, 870 F. Supp. 2d 395, 412 (D. Md. 2012) (finding "the reasoning

4

of the Third and Sixth Circuits to be highly persuasive" and concluding that "[a] debt collector should not be able to hire an attorney [or other debt collector] to engage in debt collection practices on its behalf as a means of avoiding liability under the FDCPA"). "As it stands today, more courts than not 'support the notion that an entity which itself meets the definition of 'debt collector' may be held vicariously liable for unlawful collection activities carried out by another on its behalf.'" McWilliams v. Advanced Recovery Sys., Inc., 174 F. Supp. 3d 936, 942 (S.D. Miss. 2016) (quoting Pollice v. Nat'l Tax Funding, LP, 225 F.3d 379, 404 (3d Cir. 2000)). The defendants do not cite to any cases to the contrary, and the court sees no reason to deviate from what has been described as the "general rule under the FDCPA." Fed. Trade Comm'n v. Swatsworth, No. 3:17-cv-340, 2018 U.S. Dist. LEXIS 142696, at *20 (W.D.N.C. Aug. 22, 2018) (citing Pollice, supra).

Turning to the allegations against NPM, Henderson specifically alleges that NPM "is a 'debt collector' under 15 U.S.C. § 1692a(6), because it uses instrumentalities of interstate commerce or the mails in a business, the principal purpose of which is the collection of debts, and/or regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another from consumers located across the Commonwealth of Virginia." 2d Am. Compl. ¶ 7, Dkt. No. 93-1. Henderson further alleges that USAF places defaulted student loans with NPM for collection services pursuant to the Master Servicing Agreement, which is attached to the second amended complaint. Id. ¶ 13. Under the terms of that agreement, NPM is obligated to "perform all customary and usual . . . collection services and duties associated with the collection of defaulted educational loans." Master Servicing Agreement § A(4). Although the agreement permits NPM to "utilize the services of subordinate

servicers for the purposes of effectuating collection of defaulted student loans," NPM retains "sole responsibility" for the "oversight " of such subordinate servicers. Id.

Based on the foregoing allegations, the court concludes that the second amended complaint provides a sufficient basis from which the court can plausibly infer that NPM is a "debt collector" for purposes of the FDCPA. The mere fact that "GRC and Pioneer admittedly sent the collection notices at issue" is not dispositive. Defs.' Br. Opp'n 7. As indicated above, "[t]he Act's definition of the term 'debt collector' includes a person 'who regularly collects or attempts to collect, directly or indirectly, debts owed [to] . . . another." Heintz v. Jenkins, 514 U.S. 291, 293 (1995) (emphasis added) (quoting 15 U.S.C. § 1962a(6)). The facts alleged by Henderson are sufficient to support the conclusion that NPM meets this prong of the "debt collector" definition.

The court further concludes that Henderson has adequately alleged the existence of a principal-agent relationship between NPM and the existing defendants. See, e.g., Marucci v. Cawley & Bergmann, LLP, 66 F. Supp. 3d 559, 564 (D.N.J. 2014) (noting that some courts "require a showing that the principal debt collector exercised control over the agent's activities in order to impose vicarious liability under the FDCPA"). Under general principles of agency, such relationship requires that the principal "either control (or [have] the right to direct or control)" the agent. Meyer v. Holley, 537 U.S. 280, 285 (2003); see also McDonald v. Hampton Training Sch. for Nurses, 486 S.E.2d 299, 301 (Va. 1997) (explaining that under Virginia law, "the power to control" is the determinative factor in deciding whether a master-servant relationship exists). Here, Henderson expressly asserts that NPM "exercises a high degree of control" over the collection activities of GRC and Pioneer, and that such control is evidenced by the defendants' respective agreements with NPM. 2d Am. Compl. ¶¶ 17, 21. Under those agreements, NPM

6

has "sole discretion" over the type and number of defaulted loan accounts placed with GRC and Pioneer, and the collection efforts undertaken by GRC and Pioneer must include a number of specified activities. Id. Although GRC and Pioneer are labeled as "independent contractors" in their respective agreements with NPM, such labeling is "not dispositive of the actual nature of the relationship." Brown v. Mitchell, 327 F. Supp. 2d 615, 661 (E.D. Va. 2004) (citing Thaxton v. Commonwealth, 175 S.E.2d 264, 268 (Va. 1970)). Otherwise, "principals could easily avoid any liability merely by inserting magic words" into a contract. Allen v. Seacor Marine, Inc., 423 F. Supp. 2d 653, 658 (S.D. Tex. 2003).

In sum, the court concludes that the second amended complaint sets forth sufficient facts to plausibly support claims of vicarious liability against NPM. Accordingly, the proposed amendments would not be futile, and the court will grant leave to amend.

## Conclusion

For the reasons stated, the court will grant Henderson's motion for leave to file a second amended complaint. The Clerk is directed to send copies of this memorandum opinion and the accompanying order to all counsel of record.

DATED: This 21st day of March, 2019.

/s/ Glen Conrad
Senior United States District Judge