UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| WILLIE HENDERSON, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, <br><br> Plaintiff <br><br> v. <br><br> GENERAL REVENUE CORPORATION, <br><br> and <br><br> PIONEER CREDIT RECOVERY, INC. <br><br> and <br><br> NAVIENT PORTFOLIO MANAGEMENT, LLC <br><br> Defendants. | Civil Action No. 7:17-cv-00292 |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR SANCTIONS FOR NAVIENT PORTFOLIO MANAGEMENT, LLC'S FAILURE TO PREPARE FOR AND RESPOND TO THE 30(B)(6) DEPOSITION TOPICS AS NOTICED**

## Background

On June 6, 2019, Plaintiff Willie Henderson ("Henderson") noticed the deposition of Defendant Navient Portfolio Management LLC ("NPM") pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure. **See Exhibit A.** By June 18, 2019, the date of July 19, 2019 and the location of Fishers, Indiana for the deposition was confirmed. **See Exhibit B.** On July 2, 2019, Henderson amended the Notice to include the agreed upon date of July 19, 2019 and the address for the deposition's location in Indiana.[1] **See Exhibit C.** The Notice to NPM was

---

[1] Counsel for Defendant did not offer to provide a location for the deposition.

1

substantially similar and contained analogous topic areas to the Amended 30(b)(6) Notices Henderson had previously served on Defendants General Revenue Corporation ("GRC") and Pioneer Credit Recovery, Inc. ("Pioneer"), who were deposed via their corporate designee on December 6 and 7, 2018. **See Exhibits D and E.**

As agreed, the deposition of NPM**'s** corporate designee took place on July 19, 2019. NPM designated Mark Verbrugge, a Vice President for NPM, to answer each topic of the 30(b)(6) Notice. Unfortunately, counsel for NPM first provided Verbrugge with the Notice for the day before the deposition and spent only two hours preparing him for the deposition. **See Exhibit F,** Transcript of Deposition of 30(b)(6) Deponent, Mark Verbrugge, dated July 19, 2019 ("NPM 30(b)(6) Dep."), 8:13-10:9.

> Q: How long did you meet with counsel yesterday?
> A: Two hours.
> Q: And was that the extent of your entire preparation for today, that two-hour meeting?
> A: Correct.

**See Exhibit F**, NPM 30(b)(6) Dep., 65:1-65:5.

This last minute and abbreviated preparation proved to be woefully inadequate to meet the corporation's requirements for the 30(b)(6) deposition. The deposition transcript establishes that the witness was unable to speak for the corporation on many topics, and had done very little work to prepare for the deposition.[2] On other topics, the corporate designee had general

---

[2] Four days before the deposition, NPM filed objections to the Notice which were similar to those lodged previously by GRC and Pioneer in response to the 30(b)(6) Deposition Notices served on them. The deposition notice for the NPM witness correlated in scope to the amended notices for GRC and Pioneer Credit Recovery, which resulted from a meet and confer process with opposing counsel and an informal dispute resolution process with United States Magistrate Judge Ballou. The original notices to GRC and Pioneer were issued on October 18, 2018. GRC and Pioneer noted objections to the topics on November 6, 2018. Plaintiff responded to the objections on November 9, 2016, and in part offered to narrow certain topics. Unfortunately, the parties could

knowledge, but often did not know how these topics applied specifically to Mr. Henderson's circumstances. This knowledge was required under the notice.

## **Deponent Deficiencies**

Twenty-five topic areas were identified in Plaintiff's Amended 30(b)(6) Notice to Take Deposition of Navient Portfolio Management, LLC, and the topic areas where deponent did not provide a sufficient response are as follows:

TOPIC 3

> Identification of all documents setting forth or pertaining to NPM's role in and connection with the following collection activities alleged in Henderson's Second Amended Complaint, including any applicable student loan collection policies, procedures, or practices from June 22, 2016 to the present:
> - General Revenue Corporation's ("GRC") letter communication to Henderson on February 7, 2017;
> - Henderson's February 28, 2017 notification to GRC that he disputed the debt and asked for verification, and the company's response thereto;
> - Henderson's April 24, 2017 notification to GRC that he disputed the debt and asked for verification, and the company's response thereto;
> - The "Statement of Purchased Account" Henderson received from USAF on April 26, 2017;
> - Pioneer Recovery Corporation's ("Pioneer") letter communication to Henderson on September 30, 2017;
> - Pioneer's letter communication on behalf of USAF postmarked November 1, 2017;
> - The removal of the debt from GRC and the "placement" with Pioneer; and
> - Phone calls made by GRC/Pioneer following February 28, 2017 as part of their collection efforts of the alleged Henderson debt.

The deponent could not answer several of the questions regarding Topic 3. For example, when shown Henderson's February 28, 2017 notification to GRC that he disputed the debt and asked

---

not resolve the objections and United States Magistrate Judge Ballou offered an informal resolution process. The parties conferred with the court at length on each objection and for the most part the court indicated the topics were properly drawn and discoverable. Based on the court's feedback and defendant's agreement, Plaintiff amended the 30(b)(6) notices and the depositions of GRC and Pioneer occurred according to the notices on December 6 and 7, 2018. The notice to NPM is modeled from the Amended notices to GRC and Pioneer and thus is comprised of discoverable and properly drawn topics.

3

for verification (Exhibit 2 to the deposition), which is specifically referenced in Topic 3, he admitted that he had never seen the document.

> Q: I'll show you what's been marked as Exhibit 2 and ask you to identify what that document is.
> A: It appears to be a letter written by Mr. Henderson and submitted to General Revenue.
> Q: Have you seen it before?
> A: I can't say that I've seen this specific letter, no.
> Q: Would NPM have received notice of this letter?
> A: I don't know.
> Q: Have you checked to see if NPM did receive notice of this letter?
> A: I have not.

**See Exhibit F**, NPM 30(b)(6) Dep., 31:5-31:19, and Dep. Ex. 2.

When the deponent was shown Henderson's April 24, 2017 notification to GRC that he disputed the debt and asked for verification, which is specifically referenced in Topic 3, he admitted that he had not done any investigation to determine if NPM had received the document.

> Q: As part of your preparation for today's deposition, did you research as to whether NPM received notice of Exhibit 3?
> A: I have not.

**See Exhibit F**, NPM 30(b)(6) Dep., 34:16-34:19 and Dep. Ex. 3.

The deponent also did not do any investigation into telephone calls made to Henderson.

> Q: Turn to the top of page 3. Have you done an investigation into phone calls made by GRC/Pioneer following the February 28, 2017, as part of their collection efforts of the alleged Henderson debt?
> A: I have not.

**See Exhibit F**, NPM 30(b)(6) Dep., 58:4-58:9. [3]

TOPIC 4

> The nature, extent, and content of all communications between NPM and USAF, GRC, Navient Solutions and/or Pioneer regarding Henderson's alleged student loan debt,

---

[3] At the deposition, counsel stated that counsel had searched for phone calls. However, the witness was not familiar with the parameters of the search and thus could not be questioned about it. **See Exhibit F**, NPM 30(b)(6) Dep., 37:13-37:23.

4

including but not limited to those concerning: the alleged amounts of principal, interest, or fees owed by Henderson and which NPM, GRC and Pioneer have sought to collect; any calculation methods; or explanation of calculations.

The witness did zero preparation on this topic and was unable to answer the questions.

> Q: For No. 4 on the notice, have you done an investigation between communications between NPM, USAF, GRC, Navient, and Pioneer regarding Mr. Henderson's alleged debt?
> A: No.
> Q: Have you done any investigation under No. 4 concerning how the principal, interest, and fees were calculated?
> A: No.
> Q: Have you done any investigation into any calculation methods or explanation of calculations?
> A: No.

**See Exhibit F**, NPM 30(b)(6) Dep., 58:10-58:22.

## TOPIC 5

> The relationship between NPM and Xenith Bank as relates to the servicing and/or collection of Henderson's alleged loan or debt.

The witness did zero preparation on this topic and was unable to answer the questions.

> Q: Turning to No. 5. Who was Zenith [*sic*] Bank?
> A: I have no idea.
> Q: Have you done any investigation in preparation for today to determine that?
> A: No
> Q: Have you done any investigation between the relationship between NPM and Zenith [*sic*] Bank?
> A: No.
> Q: Have you done any investigation into the relationship between NPM and Zenith Bank as relates to the servicing and/or collection of Henderson's alleged loan or debt?
> A: No.

**See Exhibit F**, NPM 30(b)(6) Dep., 58:23-59:5.

## TOPICS 6 AND 7

> The location and means of storage and retrieval of all documents pertaining to Henderson, his alleged student loan debt, and/or the collection efforts regarding same. The names, employers, and office locations of all custodians of documents pertaining to Henderson, his alleged student loan debt, servicing and collection efforts of same.

5

The witness had general knowledge but did not look at the specific documents relating to Henderson.

> Q: And what is ECS? How does it work?
> A: I have no idea how the imagine system works other than documents are scanned and stored within the ECS system.
> . . .
> Q: Are there – is there a – in the ECS system, is there a file for Mr. Henderson?
> A: I have not investigated if there is a file for Mr. Henderson in ECS.

**See Exhibit F**, NPM 30(b)(6) Dep., 60:5-60:8, 60:12-15.

## TOPIC 8

> Any calculations performed by NPM as to alleged amounts of principal, interest, or fees owed by Henderson and which NPM, GRC, and Pioneer have attempted to collect.

The 30(b)(6) witness did zero preparation on this topic.

> Q: Are you aware of any calculations performed by NPM as to alleged amounts of principal, interest, or fees owed by Henderson in which NPM, GRC, and Pioneer have attempted to collect?
> A: I am not.
> Q: Did you do any investigation into that prior to today's deposition?
> A: No

**See Exhibit F**, NPM 30(b)(6) Dep., 64:17-64:25.

## TOPIC 9

> NPM's process, including any policies or regulations regarding such, for providing information in response to a request for verification, and specifically what did NPM do when it was made aware of Henderson's first and second requests for verification. (See GRC_WH_0000051-52 (confidential) and GRC_WH_0000053 (confidential)).

As stated *supra*, the witness had already testified that he had not seen one of Henderson's requests for verification prior to the deposition. **See Exhibit F**, NPM 30(b)(6) Dep., 65:15-66:2. Regarding these two requests which are also referenced in Topic 9, the 30(b)(6) witness further testified and confirmed his lack of preparation:

6

> Q: And does NPM actually get the letter? Does the policy provide that it gets the actual letter from the person who owes the money?
> A: I don't know if the policy states that we need to obtain the actual letter.
> Q: All right. Doe you know if you got this actual letter in the NPM system?
> A: I do not.

**See Exhibit F**, NPM 30(b)(6) Dep., 66:16-66:23.

There was a training manual that applied to this topic according to the witness,[4] and it had not been produced at the time of the deposition,[5] so there was no way for Plaintiff's counsel to assess at the 30(b)(6) deposition whether NPM's training manual was followed. The witness testified that this training manual applied to topic 9. The witness stated:

> Q: I show you what's been marked as Exhibit 8. Is this the one that you thing you've seen before?
> A: I know I saw it earlier today, again, so.
> Q: And the same answer? The training answer would have covered it for the agency as to for them to notify NPM that they needed to – that they needed to respond to this?
> A: Correct.

**See Exhibit F**, NPM 30(b)(6) Dep., 68:2-68:10.

The witness testified about a training manual it provides agencies such as GRC and Pioneer on how they should collect debts from individuals like Henderson. Although requested in discovery, it had not been produced at the time of the 30(b)(6) deposition, so there was no meaningful way to question the 30(b)(6) witness about it. The witness's testimony established that the training manual was relevant to several of the topics. **See,** *e.g.*, NPM 30(b)(6) Dep., 34:20-35:2. However, regarding this training manual, counsel for NPM stated at the 30(b)(6)

---

[4] **See Exhibit F**, NPM 30(b)(6) Dep., 27:10-30:18.
[5] **See Exhibit F**, NPM 30(b)(6) Dep., 30:23-31:1.

7

deposition: "I see no relevance to it whatsoever." **See Exhibit F**, NPM 30(b)(6) Dep., 30:23-31:1.[6]

TOPIC 10

> To the extent NPM has no role in verifying the debt, upon whom it relies to perform this process and information regarding same.

The witness did not prepare for the specifics of Henderson's case so, he could only relate general information about this topic. He could not provide any specific information pertaining to Henderson. **See Exhibit F**, NPM 30(b)(6) Dep., 69:2-70:6.

TOPICS 11 AND 13

These topic areas refer to specific agreements that NPM is a party to and for which the 30(b)(6) witness must answer. The agreements refer to NPM Polices that are relevant to Henderson's case, specifically the Navient Solutions Compliance Guide, which is in NPM's possession. As with the training manual, these had not been produced in advance of the 30(b)(6) deposition, so there was no way to question the 30(b)(6) witness about these policies.

> Q: So what is the Navient Portfolio Management Compliance Guide?
> A: It's a document that ensures – well, informs agencies – informs agencies how – it's really just a document to ensure agencies are maintaining compliance with state and federal regulations.
> Q: All right.
> MR. FISHWICK: And has that been produced in this case?
> MS. SIMONETTI: I don't believe so. It's not a document that belongs to NPM, the company NPM, so I don't believe so.
> FURTHER QUESTIONS BY MR. FISHWICK:
> Q: Who does that document belong to? It's called the Navient Portfolio Management Compliance Guide.

**See Exhibit F**, NPM 30(b)(6) Dep., 72:5-72:21.

---

[6] Counsel for NPM has now stated it will produce this policy. Even if produced, it was not produced in time to question the 30(b)(6) witness about it.

| | | |
|---|---|---|
| Q: | Does Navient Portfolio Management Compliance Guide, does NPM have a copy of that? | |
| A: | Yes. | |
| Q: | You have it within your company's records? | |
| A: | Yes. | |

See **Exhibit F**, NPM 30(b)(6) Dep., 73:7-73:11.

| | | |
|---|---|---|
| Q: | But you didn't look at those documents in preparation for today's – | |
| A: | I did not. | |

See **Exhibit F**, NPM 30(b)(6) Dep., 76:18-76:20.

TOPIC 14

> To the extent NPM may contend that collection efforts on Henderson's debt deviated from what NPM would describe as its usual practice, a description and explanation as to how.

The 30(b)(6) witness did no investigation. He made an assumption, but he could not answer the

questions on this topic.

| | |
|---|---|
| Q: | NPM is not, you said? Is NPM saying it followed its usual practice with Mr. Henderson? |
| A: | As far as I'm aware, NPM followed its normal practice, yes. |
| Q: | Did you do an investigation of that --- |
| A: | No. |
| Q: | --- in preparation for today's deposition? |
| A: | No. |

See **Exhibit F**, NPM 30(b)(6) Dep., 84:16-84:24.

TOPIC 16

> Generally, NPM's role in or activities related to the administrative set off obtained against a debtor's federal and state tax returns, and specifically as relates to any such set off applied to Henderson's federal or state tax returns.

Again, the witness had some general knowledge, but no specific information regarding

Henderson's case.

| | |
|---|---|
| Q: | And so, in Mr. Henderson's case, did the guarantor notify NPM? |
| A: | I didn't look into whether the account was ever certified. |
| Q: | So, in preparation for today, you did not look into whether Mr. Henderson's |

9

     account was certified for an administrative set-off for taxes?
A:  I did not.
  ....
Q:  But, again, you didn't look at that in preparation for today?
A:  No, sir.

**See Exhibit F**, NPM 30(b)(6) Dep., 88:23-89:6, 89:21-89:23.

TOPIC 17

  NPM's procedure and/or policy regarding the placing and pulling of accounts from subordinate servicers, and specifically, how, why, and through what methods, actions, and communications was Henderson's debt "placed" with GRC, removed from GRC, and "placed" with Pioneer.

The witness did no investigation as to why Henderson's account was pulled from one collector

and placed with another, and thus could not discuss this topic.

Q:  Why was Mr. Henderson's account removed from GRC and placed with Pioneer?
A:  I didn't investigate as to why the account was recalled and placed to Pioneer, so my response would be purely speculative.

**See Exhibit F**, NPM 30(b)(6) Dep., 89:24-90:3.

TOPIC 18

  The number of and identities of all subordinate servicers NPM has contracted with between June 22, 2016 and the present and any corporate relationship each may have with Navient Corporation.

Again, the witness did zero preparation with respect to this topic.

Q:  Since June 22 of 2016, who were the subordinate servicers NPM has contracted with?
A:  Like, I couldn't name them off the top of my head.
Q:  So, again, in preparation for today, you did not do any investigation into Question No. 18 on the deposition notice?
A:  No, I did not.

**See Exhibit F**, NPM 30(b)(6) Dep., 90:7-90:15.

TOPIC 20

  Identification of all parent, subsidiary, and affiliate entities of NPM and identification of the directors and officers of each such entity, the state of incorporation of each entity, and

the principal place of business for each entity, and, for each entity identified, identification of any corporate relationship to Navient Corporation.

The 30(b)(6) witness knew some of this information, but he had done no preparation on this topic and therefore could not answer a number of relevant questions.

> Q: And who's on the board?
> A: I have no idea.
> Q: Did you investigate that in preparation for today's deposition?
> A: I did not.
> Q: Besides Mr. Remondi as president, did you investigate who the officers were of – other officers were of Navient Corp.?
> A: No.
> Q: And did you investigate who any of the board of directors were of November [*sic*] Corp.?
> A: No.
> Q: And did you do that investigation from – for June of 2016 to the present?
> A: I did no investigation.

**See Exhibit F**, NPM 30(b)(6) Dep., 96:2-96:16.

> Q: What state is it [NPM] incorporated in?
> A: Honestly, I don't know.
> Q: Did you do any investigation into that in preparation for today?
> A: I did not.
> Q: What state is Navient Corporation incorporated it?
> A: I didn't investigate that either.

**See Exhibit F**, NPM 30(b)(6) Dep., 97:4-97:11.

TOPIC 21

The location of and the custodian for all documents pertaining to Account ID # 50006682856; Account ID # 9835500120-1713; and Consumer ID # 13101249 and an explanation of who assigned or created these accounts.

As the deposition wore on, the witness continued to declare he had not looked into the topic areas identified in Henderson's 30(b)(6) Notice.

> Q: Take a look at Question 21 in the Notice of Deposition.
> A: All right.
> Q: In preparation for today, did you identify what accounts those were?
> A: No.
> Q: So you don't know what those accounts are?

11

>
> A: I do not.
> Q: So you can't answer the question for 21 because you don't even know which accounts those are?
> A: Correct.
> MS. SIMONETTI: Lacks foundation, too.
> MR. FISHWICK: Pardon?
> MS. SIMONETTI: Lacks foundation.
> Q: And since you don't know what accounts these are, you cannot provide an answer today of who assigned or created these accounts?
> MS. SIMONETTI: Lacks foundation. Go ahead.
> A: I cannot, no.

**See Exhibit F**, NPM 30(b)(6) Dep., 101:13-102:9.

## TOPIC 24

> The identities and number of individuals in Virginia who received Henderson000001-7 or a substantially similar communication from June 22, 2016 to the present.

The 30(b)(6) witness did not identify who received the same letter as Plaintiff.

> Q: And do you have the names of those people?
> A: The names could be produced. I know there was a count produced, but I'm sure the names could be attached to those, yes.
> Q: And do you have those names today? Have you brought those names with you today?
> A: I have not brought those names with me today.
> Q: Did you do any research on those names prior to today?
> A: I did not.

**See Exhibit F**, NPM 30(b)(6) Dep., 128:14-128:23.

## TOPIC 25

> Explanation of all information documented and provided in the following documents: A. NPM_WH_0000001-000068; 000069-95; 259; 260-310; 311-338; 339-342; 343-352 (confidential); B.GRC_WH_0001082-87 (confidential); and C.GRC_WH_0001088-1151 (confidential).

The witness was familiar with the general nature of the documents but could not answer certain specific questions. Regarding certain computer entries for Henderson's account the witness stated:

12

> Q: All right. And then the entry below that, it says, "12/27/16 invoice." What does that mean?
> A: "12/27/16 DZ-DE invoice." I don't know what that code means. I don't.
> Q: All right. You didn't look at that ahead of time?
> A: I did not look at that ahead of time, and, quite frankly, I look at very few transaction level detail histories.
> Q: Okay. And you didn't look at that in preparation for today?
> A: No, I did not.

**See** **Exhibit F**, NPM 30(b)(6) Dep., 156:2-156:14.

As relates to documents 343-352, the 30(b)(6) witness stated:

> Q: But you didn't investigate ahead of time to confirm that before this deposition?
> A: No. There's two agencies that we're talking about, so I assume it's Pioneer, but I did not confirm it, no.

**See** **Exhibit F**, NPM 30(b)(6) Dep., 158:15-158:19.

As to the final document shown to the witness, he testified to the best of his knowledge what it was, but his answer encapsulates NPM's disregard for the Rule 30(b)(6) process:

> Q: Okay. And that's what that policy is?
> A: That, to the best of my knowledge, that's what that policy would be for. It has nothing to do with NPM.
> Q: Okay. But did you look at that ahead of time?
> A: No. No reason to.

**See** **Exhibit F**, NPM 30(b)(6) Dep., 160:23-161:4.

### Discussion

Federal Rule of Civil Procedure 30(b)(6) provides:

> In its notice or subpoena, a party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination. **The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf**; and it may set out the matters on which each person designated will testify. A subpoena must advise a nonparty organization of its duty to make this designation. **The persons designated must testify about information known or reasonably available to the organization.** This paragraph (6) does not preclude a deposition by any other procedure allowed by these rules.

Fed. R. Civ. P. 30(b)(6) (emphasis added). Thus, a corporation must designate one or more individuals to answer the questions related to the topics posed to it in the 30(b)(6) Deposition Notice. The individual designated must testify to what is known or reasonably known to the corporation. If the individual does not have the personal knowledge to answer a question, that individual has an obligation to investigate and find the answers on behalf of the corporation, or the corporation must designate an individual who *does* possess such knowledge. As the district court observed in United States v. Taylor, 166 F.R.D. 356 (M.D.N.C. 1996):

> The testimony elicited at the Rule 30(b)(6) deposition represents the knowledge of the corporation, not the individual deponents. The designated witness is 'speaking for the corporation' . . . The corporation appears vicariously through its designee. **If the persons designated by the corporation do not possess personal knowledge of the matters set out in the deposition notice, the corporation is obligated to prepare the designees so that they may give knowledgeable and binding answers for the corporation. Thus, the duty to present and prepare a Rule 30(b)(6) designee goes beyond matters personally known to that designee or to matters in which that designee was personally involved.**
>
> . . . . Rule 30(b)(6) **explicitly requires [a corporation] to have persons testify on its behalf** as to all matters known or reasonably available to it and, therefore, **implicitly requires such persons to review all matters known or reasonably available** to it in preparation for the Rule 30(b)(6) deposition.

*Id.* at 361 (citations omitted) (emphasis added). Indeed, "if a Rule 30(b)(6) witness is unable to give useful information he is no more present for the deposition than would be a deponent who physically appears fefor the deposition but sleeps through it." Black Horse Lane Assoc., L.P. v. Dow Chem. Corp., 228 F.3d 275, 304 (3d Cir. 2000).

This Court is no stranger to corporations shirking the mandates of Rule 30(b)(6). As this Court noted in Spicer v. Universal Forest Products, 71 Fed. R. Serv. 3rd 1254 (2008):

> The fact that preparation for a 30(b)(6) deposition requires many hours of work and review of voluminous documents does not relieve the corporation of its responsibility to adequately prepare. *Concerned Citizens of Belle Haven v. The Belle Haven Club*, 223 F.R.D. 39, 43 (D.Conn 2004); see also *Taylor*, 166 F.R.D. at 362 ("The Court understands that preparing for a Rule 30(b)(6) deposition can

14

be burdensome. However, this is merely the result of the concomitant obligation from the privilege of being able to use the corporation form in order to conduct business").

In Spicer, the corporate designee exhibited very similar behavior to that of NPM's designee, Verbrugge, and, consequently, the Court imposed significant sanctions. In finding sanctions appropriate, the Court noted:

> In short, despite the clear requirements of Rule 30(b)(6), Universal did not come close to meeting its designation to provide a witness who could testify "about information known or reasonably available the organization." Fed. R Civ. P 30(b)(6). Whether by design or oversight, it is clear that Universal company disregarded its obligations under Rule 30(b)(6). Spicer has been prejudiced in terms of the expenses incurred in preparing for an attending a 30(b)(6) deposition in a distant city that was utterly futile, and in its inability to obtain discoverable information on the company's alleged financial downturn. Sanctions are necessary in this case to deter a corporate party from hiding the ball as to such a critical defense. Given the immediacy of the trial date, requiring the plaintiff to conduct another Rule 30(b)(6) deposition would only serve to punish plaintiff's counsel by requiring them to retrace their steps instead of preparing for the impending trial. As such, the court finds the following sanctions to be appropriate under the Fourth Circuit's *Wilson* standard.

The Spicer case is directly on point here. A 30(b)(6) deposition was held in the Midwest at great expense, and the witness, based on woeful preparation, could not answer many of the questions. On those questions he could respond to, he was unfamiliar with any information specific to Henderson, despite such information being called for in the 30(b)(6) Notice. Sanctions are likewise appropriate in this case, and NPM must pay all costs and attorney fees associated with the preparation and taking of this 30(b)(6) deposition and this motion.

Monetary sanctions, however, are inadequate. NPM's failure to sufficiently provide a corporate designee who could answer Henderson's noticed 30(b)(6) topics was particularly egregious in light of Defendants' joint Motion for Partial Summary Judgment (ECF No. 135). The topics identified in the 30(b)(6) Notice are not only relevant to Henderson's case, but also to the arguments offered by Defendants in their Motion for Partial Summary Judgment.

15

Defendants' Motion for Partial Summary Judgment relies on the details of their transactions with Henderson. The NPM 30(b)(6) witness made little effort to answer Henderson's questions about his particular case. The witness could not answer questions about dates, and he had not reviewed many of the documents identified in the notice. NPM's corporate designee did not examine the electronic records to establish what was in the NPM records and when a document was received or sent. Further, the corporate designee did not review how NPM's collection fees and costs were calculated and that is the core of the lawsuit. There was no way to question NPM's witness about corporate policies to determine if the policies were followed. Of the twenty-five topics noticed, the corporate designee could not answer or gave incomplete answers to eighteen out of the twenty-five noticed topics.

Indeed, the Defendants are interrelated companies, but the 30(b)(6) witness was not able to fully answer questions regarding how the companies are interrelated. He failed to do this most basic due diligence.

Therefore, as in Spicer, monetary sanctions are inadequate. As a sanction, this Court should strike the Defendants' Motion for Summary Judgment. "Given the fact that the trial is imminent and summary judgment briefs have been filed, . . . at this late stage of litigation, no other sanctions are either effective or appropriate." Spicer, 2008 U.S. Dist. LEXIS 77232, at *23-24 (W.D. Va. Oct. 1, 2008). Other courts within this circuit have noted the availability (and appropriateness) of broad sanctions for the failure to adequately provide a 30(b)(6) witness:

> It is well-established across jurisdictions that "[p]roducing an unprepared [Rule 30(b)(6)] witness is tantamount to a failure to appear." *United States v. Taylor*, 166 F.R.D. 356, 363 (M.D.N.C.), *aff'd*, 166 F.R.D. 367 (M.D.N.C. 1996). The corporation or entity named in a 30(b)(6) notice "must make a good-faith effort to designate people with knowledge of the matter sought by the opposing party and to adequately prepare its representatives so that they may give complete, knowledgeable, and nonevasive answers in deposition." *Spicer v. Universal Forest Prod., E. Div., Inc.*, No. 7:07CV462, 2008 U.S. Dist. LEXIS 77232, 2008 WL

4455854, at *3 (W.D. Va. Oct. 1, 2008). **In the event that a party or person produces an unprepared 30(b)(6) witness, the Court may impose any of the sanctions listed in Rule 37(b)(2)(A)(i)-(vi), which range from the imposition of costs to the entry of default judgment.** Fed. R. Civ. P. 37(d)(3). Further, "[i]nstead of or addition to" the foregoing sanctions, the Court "must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust. *Id.*

Scott Hutchison Enters. v. Cranberry Pipeline Corp., 318 F.R.D. 44, 54 (S.D. W. Va. 2016)

(emphasis added).

Consistent with Federal Rules of Civil Procedure, and the rationales underlying the rules, this Court should strike the Defendants' Motion for Summary Judgment and order NPM to pay all costs and attorney fees associated with the preparation and taking of this 30(b)(6) deposition.

> Respectfully submitted,
>
> WILLIE HENDERSON, individually and on behalf of all others similarly situated
>
> By: /s/ John P. Fishwick, Jr.
> Of Counsel

John P. Fishwick, Jr. (VSB #23285)
john.fishwick@fishwickandassociates.com
Monica L. Mroz (VSB #65766)
Monica.mroz@fishwickandassociates.com
Carrol M. Ching (VSB #68031)
carrol.ching@fishwickandassociates.com
Daniel J. Martin (VSB #92387)
daniel.martin@fishwickandassociates.com
Fishwick & Associates PLC
30 Franklin Road, Suite 700
Roanoke, Virginia 24011
(540) 345-5890 (telephone)
(540) 345-5789 (facsimile)

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on July 29, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all counsel of record.

By: /s/ John P. Fishwick, Jr.
John P. Fishwick, Jr. (VSB #23285)
30 Franklin Road, Suite 700
Roanoke, Virginia 24011
Phone: (540) 345-5890
Facsimile: (540) 345-5789
John.fishwick@fishwickandassociates.com

18

Case 7:17-cv-00292-GEC  Document 141  Filed 07/29/19  Page 18 of 18  Pageid#: 1738