IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **WILLIE HENDERSON**, individually and on behalf of all others similarly situated,<br><br>   Plaintiff,<br><br>v.<br><br>**GENERAL REVENUE CORPORATION, PIONEER CREDIT RECOVERY, INC. and NAVIENT PORTFOLIO MANAGEMENT, LLC**<br><br>   Defendants. | Civil Action No. 7:17-cv-00292-GEC |

**DEFENDANT NAVIENT PORTFOLIO MANAGEMENT'S
OPPOSITION TO PLAINTIFF'S MOTION FOR SANCTIONS**

Pursuant to Local Civil Rule 11(c)(1), defendant Navient Portfolio Management, LLC ("NPM"), by and through undersigned counsel, hereby responds in opposition to the Motion for Sanctions (ECF 140-41) (the "Motion") brought by plaintiff Willie Henderson ("Henderson"), stating as follows:

## INTRODUCTION

Simply put, Henderson's Motion is ill-conceived and lacking very significant context. Henderson attempts to portray NPM's corporate representative, Mark VerBrugge ("VerBrugge"), as unknowledgeable and unprepared to discuss relevant topics at his deposition, but this is simply not true. Rather, Henderson persisted in questioning VerBrugge on topics having little to no relevance to NPM's involvement in this suit or to NPM at all. Instead of seeking to capitalize on VerBrugge's extensive knowledge of NPM and its business operations, acquired during twenty-

- 1 -

four years of employment, Henderson wasted much of VerBrugge's deposition disparaging his deposition preparation. As VerBrugge's testimony shows, he has detailed knowledge of NPM and its business operations (indeed, he is responsible for supervision of those operations). When Henderson actually asked VerBrugge a question about NPM, VerBrugge was prepared to (and did) provide testimony. Thus, no sanctions are warranted; NPM complied with its discovery obligations.

Additionally, the remedy that Henderson seeks -- the denial of the Motion for Partial Summary Judgment (the "Summary Judgment Motion") as to NPM, *as well as co-defendants General Revenue Corporation ("GRC") and Pioneer Credit Recovery, Inc. ("Pioneer"), which were not involved whatsoever in the deposition of NPM* -- is without precedent. Henderson also does not cite, much less discuss, the legal standard for discovery sanctions in the Fourth Circuit.

By the Motion, Henderson seeks what he otherwise will be not able to achieve through litigation -- the ability to pursue his purported claims past the summary judgment stage. Henderson's motivation is made clear by the fact that his Motion *nowhere* states what *information* he supposedly needed, but was unable to secure through VerBrugge's deposition, to oppose the pending Summary Judgment Motion. Moreover, the request to strike the Summary Judgment Motion as to NPM is misguided. Henderson asserts only a theory of vicarious liability against NPM, and resolution of the instant claims therefore turns on the conduct of GRC and Pioneer. Accordingly, even if the Court could properly strike the motion brought by NPM, nothing would be achieved.

## FACTUAL BACKGROUND

In the First Amended Complaint, Henderson alleged that defendants GRC and Pioneer violated the Fair Debt Collection Practices Act (the "FDCPA") in various ways. Subsequently, in

the Second Amended Complaint, filed on March 21, 2019, Henderson added NPM as a defendant on a theory of vicarious liability for the alleged violations by GRC and Pioneer but not for any independent violations of the FDCPA. *See* Second Amended Complaint (ECF 110). Henderson made this clear in his Motion to File a Second Amended Complaint. *See* ECF 93 at ¶ 5 (seeking leave to amend the complaint to add NPM as a party because "NPM can be held vicariously liable for GRC's and Pioneer's violations of the FDCPA."); *see also* Memorandum Opinion (ECF 106) (permitting amendment on theory of vicarious liability). Under this theory, NPM can be held vicariously liable if a principal-agent relationship exists between NPM and the other defendants and if Henderson can demonstrate that NPM was a "debt collector." *See id.* at 5-7 (explaining what plaintiff needs to prove).

On June 6, 2019, Henderson noticed the 30(b)(6) deposition of NPM's corporate representative. *See* Memorandum in Support of Motion ("Memorandum") at Exhibit A. Despite NPM having been added to this case solely on the vicarious liability theory, Henderson's deposition topics were wide-ranging and not tailored to NPM. Moreover, as Henderson admits in his Memorandum (p. 2), these topics were "substantially similar" to those included in the deposition notices served on GRC and Pioneer, who are in this case on the alleged substantive violations of the FDCPA. *See* Memorandum at 2 and Exhibits D and E. NPM served objections to the deposition topics, but without intent to prevent questioning on relevant issues. *See* **Exhibit A**. Rather than work with NPM on any issues regarding the topics, Henderson stated he would ignore them and seek sanctions if NPM did not provide testimony. *See* **Exhibit B**.

NPM designated VerBrugge, a Vice President and 24-year veteran who supervises the operations of NPM, as the witness. *See* Deposition transcript of Mark VerBrugge, attached hereto as **Exhibit C**, at 5:12-25. At the deposition, it quickly became apparent that Henderson was more

interested in tactics than in obtaining information. For example, Henderson commenced the deposition by unaccountably demanding that Matthew Sheldon, Esq., Navient in-house counsel representing NPM, as well as GRC and Pioneer, leave the room. **Exhibit C**, at 15:10–18:9. Further, Henderson's counsel read Topic 1 of the Notice of Deposition into the record, as follows: "The corporate administration, organizational, and management structure of NPM from June 22, 2016 through the present, including the purpose of each student loan collections related department, division or organizational unit and a general description of the duties of the employees in each such organizational unit." *See* Ex. A to Memorandum. Counsel then demanded that VerBrugge provide an "answer" to the topic without positing any specific questions:

> Q: "I draw your attention to Question 1 of the 30(b)(6) notice. . . . What is your answer to the question?"

Exhibit C at 10:10-14. After multiple objections, with VerBrugge explaining that he did not understand the question (*id.* at 10:15-12:15), Henderson's counsel did not attempt to clarify (or ask a specific question). Instead, taking VerBrugge's statement that he did not understand the question, counsel stated: "Okay. So is that your answer?" *Id.* at 12:16. Counsel then moved on, and this was not the only such instance of counsel's disinterest in securing information relevant to the claims and defenses in this case or even Henderson's theory of vicarious liability against NPM.

Instead of asking specific questions of VerBrugge regarding the various deposition topics, Henderson's counsel repeatedly asked if VerBrugge had "done any investigation," refusing to go further. To wit:

> Q: Turn to the top of page 3. Have you done an investigation into phone calls made by GRC/Pioneer following the February 28, 2017, as part of their collection efforts of the alleged Henderson debt?
>
> A: I have not.

> Q: For No. 4 on the notice, have you done an investigation between communications between NPM, USAF, GRC, Navient [Solutions LLC], and Pioneer regarding Mr. Henderson's alleged debt?
>
> A: No.
>
> Q: Have you done any investigation under No. 4 concerning how the principal, interest, and fees were calculated?
>
> A: No.
>
> Q: Have you done any investigation into any calculation methods or explanation of calculations?
>
> A: No.

Ex. C at 58:4-22. None of these questions laid any sort of foundation for the witness's knowledge, and counsel was not interested in learning what VerBrugge actually knew -- only what "investigation" he did. Of course, VerBrugge did not need to "investigate" matters where he already had the information or where NPM would not have the information. For instance, NPM's records reflect its dealings with Henderson's account, and those records were produced (and reviewed by VerBrugge in preparation for the deposition). Hence, there was nothing to "investigate" regarding communications with USAF, GRC or Navient Solutions, LLC.[1] Further, had counsel asked VerBrugge how Plaintiff's loan debt was calculated, VerBrugge would have responded that NPM performs no such calculations. *See id.* at 140:6-7 (explaining that the calculations came from the guarantor entity, not NPM).

Indeed, it was obvious that VerBrugge has extensive knowledge of NPM's business operations based on his years of experience. *See, e.g.*, Ex. C at 132:1-135:11 (providing explanation of the mail room process regarding written communications sent to borrowers); 59:18-60:8 (explaining the location of documents in NPM's computer systems); 54:2-57:22 (providing

---

[1] Also, VerBrugge obviously had no obligation to testify on behalf of GRC or Pioneer. They are separate companies and have already provided deposition testimony.

explanation of how garnishment notices are sent); 143:4-149:25 (discussion of computer system notes and generation of communications to Henderson). Indeed, Mr. VerBrugge is an experienced deponent who has previously testified in several depositions. However, despite VerBrugge's extensive knowledge, counsel displayed his own lack of understanding of NPM's role in dealing with Henderson's loan account and repeatedly questioned VerBrugge on topics that were irrelevant to NPM's operations (and, thus, the theory of vicarious liability alleged against NPM) and narrowly focused on whether the witness had done any "investigation." *See, e.g.*, Memorandum at 11-12 (identifying questions posed without the predicate foundation); Ex. C at 59:3-14 (asking witness whether he had performed any investigation into the relationship between NPM and Xenith Bank without asking if NPM *ever had* a relationship with Xenith Bank, which it did not; NPM has no relationships with originating lenders).

## ARGUMENT

### I. NPM Provided A Witness With Knowledge On The Relevant Deposition Topics.

In response to the Notice of Deposition, NPM was required to "designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf;" this witness must then "testify about information known or reasonably available to the organization." Fed. R. Civ. P. 30(b)(6). Though the individual must testify as to what is known or reasonably known to the corporation, the individual may do so based on his/her personal knowledge if he/she possesses such knowledge. *See, e.g.*, *Beach Mart, Inc. v. L&L Wings, Inc.*, 302 F.R.D. 396, 40 (E.D.N.C. 2014) (noting that, "'[i]f the designated witness does not have personal knowledge of the deposition topics, the corporation must prepare the witness to give 'knowledgeable and binding answers for the corporation.'") (citing *United States v. Taylor*, 166 F.R.D. 356, 361 (M.D.N.C. 1996)).

Here, the Notice of Deposition contained topics unrelated to NPM, its alleged vicarious liability or its purported status as a "debt collector." *See, e.g.*, Exhibit A at #20 (seeking the names of every board member and director and the state of incorporation for every entity which was affiliated in some way with NPM). Most of the topics were also vague, ambiguous and failed to inform NPM as to what information Henderson actually sought. NPM nevertheless produced VerBrugee, with his extensive knowledge of NPM's operations and structure, after a review of all of the documents produced by NPM in this action.[2]

As noted above, Henderson bases the Motion on a flawed premise:  Because VerBrugge performed no "investigation" of various topics, he must have been unprepared to testify. Nothing could be further from the truth. VerBrugge supplied detailed answers about, for example, NPM's structure, its role with respect to GRC and Pioneer, how it maintains information in its systems, the communications which were sent to Henderson and even the minutiae of how the mail room operates. *See* Ex. C at 18:12-31:1; 47:6-51:4; 54:2-57:21; 59:15-61:14; 62:14-64:9; 69:2-73:6; 79:2-81:16; 84:25-88:22; 90:16-93:5; 93:17-96:1; 97:12-107:14; 109:9-113:23; 114:19-121:23; 122:8-125:15; 125:21-127:13; 128:24-129:24; 130:3-142:4; 142:8-150:3; 150:6-152:6; 153:12-156:1; 156:18-158:19 (collectively, demonstrating the breadth of knowledge that VerBrugge possessed and his testimony concerning the same). In the Motion, Henderson points to out-of-context quotes to support his position that VerBrugge allegedly knew, and testified to, nothing. Yet, when the Court examines the testimony in its actual context, including the approximately 100 pages attached as Exhibit C to this Opposition, the Court will find that VerBrugge came prepared

---

[2] Henderson's refusal to meet and confer with NPM per its discovery obligations is not limited to just this Motion; indeed, NPM had to force plaintiff to meet and confer regarding Plaintiff's Motion to Compel.  *See* Opposition to Motion to Compel, ECF 139, at 2 and Exhibit B thereto.

to discuss the relevant topics in great detail, and that he did so. As such, NPM met its discovery obligations with respect to the 30(b)(6) deposition. Had Henderson made a follow up request for information that he truly needed in order to oppose the Summary Judgment Motion, NPM could have provided it.

## II.     Henderson's Demand For Sanctions Demand Is Unsupported.

Under the Fourth Circuit's precedent, this Court applies a four-part test to determine whether sanctions should issue under Rule 37. "(1) whether the noncomplying party acted in bad faith; (2) the amount of prejudice his noncompliance caused his adversary, which necessarily includes an inquiry into the materiality of the evidence he failed to produce; (3) the need for deterrence of the particular sort of noncompliance; and (4) the effectiveness of less drastic sanctions." *Mut. Fed. Sav. & Loan Ass'n v. Richards & Assocs.*, 872 F.2d 88, 92 (4th Cir. 1989) (citing *Wilson v. Volkswagen of Am., Inc.*, 561 F.2d 494, 503-04 (4th Cir. 1977). Here, Henderson makes no effort at all to demonstrate that his demand for sanctions meets this four-part test, <u>failing to even cite the test</u>. Moreover, given that NPM is named only on a vicarious liability theory, and that Henderson has already deposed and taken significant discovery of GRC and Pioneer, it is not clear what material evidence NPM purportedly failed to provide.[3] Indeed, in the Motion, Henderson does not identify *any* such information, which precludes a showing of prejudice.

In the Motion, Henderson relies almost exclusively on a case that his counsel litigated over ten years ago, *Spicer v. Universal Forest Prods.*, Case No. 7:06-cv-462, 2008 U.S. Dist. LEXIS 77232 (W.D. Va. Oct. 1, 2008). In that case, the corporate witness literally disavowed his obligation to know anything about the topics, and his counsel instructed him to not answer

---

[3] Henderson makes no note in his Opposition to Defendants' Motion for Partial Summary Judgment that he needs more testimony from VerBrugge and even cites to his testimony in support of his Opposition.  *See* ECF 145 at 8 n.6.

numerous other questions. *See id.* at *6-9. Further, even though the corporation provided no testimony whatsoever -- the Court calling it a "futile exercise" (*id.* at *8) -- the corporation later provided an affidavit from a company witness which provided the missing testimony in conjunction with a motion for summary judgment. *Id.* at *17-22. The court found that the defendant corporation was "hiding the ball as to [] a critical defense" and, as a sanction, refused to allow the defendant to advance that defense. *Id.* at *23-24. The complete lack of testimony also covered a separate affirmative defense, but the Court did *not* strike the second affirmative defense because the plaintiff was able to obtain the information elsewhere. *Id.* at *24.

Compared to *Spicer*, the instant case is unrecognizable. First, VerBrugge testified at length about all manner of topics and issues, even though most had nothing to do with NPM's alleged vicarious liability or whether NPM was a "debt collector" under the FDCPA. *See generally* Exhibit C. Second, the defendant in *Spicer* had deprived the plaintiff of *any* method to obtain the sought-after testimony. *See Spicer* at *15-16. Here, not only did VerBrugge testify in great detail, but NPM is in this suit on a theory of vicarious liability based on the purported actions or omissions of GRC and Pioneer, and NPM's affirmative defenses are the same as GRC's and Pioneer's. Critically, Henderson has already deposed both GRC and Pioneer (and has not found their testimony to be wanting in any respect). Thus, even if VerBrugge had wrongfully failed to supply relevant answers to questions posed during his 30(b)(6) deposition, *which he did not*, Henderson has obtained the information regarding GRC and Pioneer's actions from those parties. Thus, this case bears no resemblance whatsoever to *Spicer* (other than sharing the same plaintiff's counsel). The Court should reject Henderson's sanctions request in its entirety.

## CONCLUSION

For the foregoing reasons, NPM respectfully requests that this Court deny the Motion.

Dated: August 12, 2019                              Respectfully submitted,


                                                    By:  /s/ Michael A. Hass

                                                    GREENBERG TRAURIG, LLP
                                                    Lisa M. Simonetti (admitted pro hac vice)
                                                    simonettil@gtlaw.com
                                                    1840 Century Park East, Suite 1900
                                                    Los Angeles, California 90067
                                                    Tel: 310-586-7700
                                                    Fax: 310-586-7800

                                                    GREENBERG TRAURIG, LLP
                                                    Michael A. Hass (VSB 74974)
                                                    hassm@gtlaw.com
                                                    1750 Tysons Boulevard Suite 1000
                                                    McLean, Virginia 22102
                                                    Tel: 703-749-1300
                                                    Fax: 703-749-1301

                                                    WOODS ROGERS PLC
                                                    Frances Elizabeth B. Waller
                                                    bburgin@woodsrogers.com
                                                    Joshua F.P. Long
                                                    jlong@woodsrogers.com
                                                    P.O. Box 14125
                                                    Roanoke, VA 24038-4125
                                                    Tel:  540-983-7625
                                                    Fax: 540-983-7711

                                                    *Counsel for Defendants*

## CERTIFICATE OF SERVICE

I certify that on August 12, 2019, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all parties of record.

*/s/ Michael A. Hass*